UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>LUIS HERNANDEZ SANDOVAL,<br><br>    Defendant. | CASE NO. CR14-5105 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on Defendant Luis Hernandez Sandoval's motion to reduce sentence and for compassionate release. Dkts. 564, 605. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I.   FACTUAL & PROCEDURAL BACKGROUND**

Sandoval was a leader of a multi-person drug distribution ring in the greater Pierce County area. PSR, ¶¶ 19–23. In February 2014, Sandoval and other members of his conspiracy were arrested, and Sandoval was charged with Conspiracy to Distribute Methamphetamine and Heroin—specifically conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine and one kilogram or more of a

mixture or substance containing heroin—in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Dkt. 167. Sandoval pled guilty to the lesser-included offense of conspiracy to distribute 50 grams or more of a mixture or substance containing methamphetamine and 100 grams or more of a mixture or substance containing heroin. Dkt. 298. On April 24, 2015, the Honorable Ronald B. Leighton sentenced Sandoval to 120 months imprisonment.[1] Dkts. 400, 401. Sandoval is currently housed at the Medical Center for Federal Prisoners ("MCFP") in Springfield, Missouri and is scheduled to be released on September 2, 2022. Sandoval has an active immigration detainer and will be deported following his release from MCFP.

On May 11, 2020, Sandoval moved for compassionate release, arguing that his chronic medical conditions rendered him more vulnerable to severe illness from COVID-19. Dkt. 564. On June 10, 2020, Judge Leighton denied the motion, finding that the policy statement in USSG § 1B1.13 to be binding and that Sandoval did not establish extraordinary and compelling reasons under that standard. Dkt. 587. Furthermore, because Sandoval is to be deported following the competition of his sentence, Judge Leighton concluded that Sandoval would be held at an immigration detention facility for at least 120 days prior to his removal and that granting release would likely place Sandoval at a greater risk. *Id.*

On June 18, 2020, Sandoval filed a timely notice of appeal from the June 10 Order. Dkt. 590. In late June 2020, after the notice of appeal was filed, the Department of

---

[1] This case was reassigned to this Court on November 16, 2020 following Judge Leighton's retirement from the federal bench. Dkt. 599.

ORDER - 2

Justice announced a change in position and directed Assistant United States Attorneys to concede a defendant has established an extraordinary and compelling reason that could justify reduction in sentence if the defendant suffers from a medical condition that the CDC recognizes as an increased risk of serious illness from COVID-19. Dkt. 600, ¶ 5. Because of the Government's new position, the parties jointly moved to remand the case. Dkt. 597. The Court of Appeals for the Ninth Circuit granted the motion, vacated the June 10 Order, and remanded the case for further proceedings. *Id.*

Following remand, the parties stipulated to allow Sandoval to file a new motion or additional material for the Court's consideration. Dkt. 600. On December 22, 2020, Sandoval filed a renewed motion to reduce sentence pursuant to the First Step Act, Dkt. 605, a motion to seal, Dkt. 606, and a motion for leave to file overlength briefing, Dkt. 608. On January 11, 2021, the Government responded, Dkt. 611, and filed a motion for leave to file overlength response, Dkt. 610, and a motion to seal, Dkt. 612. On January 25, 2021, Sandoval replied, Dkt. 614, and filed a motion for leave to file overlength reply, Dkt. 615.

## II.  DISCUSSION

**A.    Motions to Seal and Motions for Leave to File Overlength**

Regarding the motions to seal, Sandoval and the Government assert that the exhibits they submitted in support of the motion and response, respectively, contain Sandoval's personal and medical information and should remain under seal. Dkts. 606, 612. The Court agrees that this information should remain confidential and therefore grants the motions. The Court also grants Sandoval's unopposed motions to file

supporting briefs, Dkts. 608, 615, and the Government's unopposed motion to file opposition brief, Dkt. 610, in excess of the twelve-page limitation imposed by Local Criminal Rule 12(b)(5) of the Rules of the United States District Court for the Western District of Washington.

**B.     Motion for Compassionate Release**

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended § 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>     (i) extraordinary and compelling reasons warrant such a reduction;
> \*\*\*
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

18 U.S.C. § 3582(c)(1)(A). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative

appeal rights of the Bureau of Prison's ("BOP") failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id.*

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1)(A) Extraordinary and compelling reasons warrant the reduction;
> \*\*\*
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

United States Sentencing Guidelines ("USSG") § 1B1.13. However, circuits across the country have held that § 1B1.13 is inapplicable to defendant-initiated motions for compassionate release. *See, e.g.*, *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered USSG § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." (internal citation omitted)). Rather, USSG § 1B1.13 is helpful guidance to the Court when exercising its discretion.

Therefore, on a defendant-initiated motion under the First Step Act, the defendant must show that they have extraordinary and compelling reasons to warrant their release, and the Court must consider the sentencing factors under 18 U.S.C. § 3553(a).

### 1. Extraordinary and Compelling Reasons

Recently, Judge Thomas S. Zilly has provided a non-exhaustive list of factors federal courts have considered in determining whether a defendant has extraordinary and compelling reasons for compassionate release in the context of COVID-19:

> (i) whether the inmate is at higher risk because of his or her age and/or race, *see United States v. Young*, No. CR19-5055 BHS, 2020 WL 2614745, at *3 (W.D. Wash. May 22, 2020); (ii) whether the inmate has one or more, medically-documented, chronic health conditions that render him or her more vulnerable to COVID-19, *see United States v. Locke*, No. CR18-0132 RAJ, 2020 WL 3101016, at *4 (W.D. Wash. June 11, 2020) (observing that the movant's health issues were "not merely self-diagnosed," but rather "medically documented and verified"); *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (inmate with type 2 diabetes, obesity, hypertension, and liver abnormalities was in a "higher risk category"); (iii) the fatality rate for individuals with similar health conditions as compared with the overall fatality rate for COVID-19, *see id.* (summarizing COVID-19 fatality rates); *United States v. Pippin*, No. 16-0266, 2020 WL 2602140, at *1 (W.D. Wash. May 20, 2020) (granting a motion brought by a defendant suffering from pancytopenia, which is associated with an "over fivefold enhanced risk of severe COVID-19"); (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease, *see United States v. Reynolds*, No. 2:18-cr-00131-RAJ, 2020 WL 3266532, at *3–4 (W.D. Wash. June 17, 2020) (denying a motion for compassionate release brought by an inmate who recovered from and was "not suffering from any reported lingering symptoms" related to COVID-19); and (v) whether the inmate's release is expected to reduce the risk of him or her contracting COVID-19, *see United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020) (declining to release a defendant to a situation that "would likely place him at greater risk").

*United States v. Grubbs*, No. CR16-228 TSZ, 2020 WL 3839619, at *2 (W.D. Wash. July 8, 2020).

The Court finds these factors useful, instructive, and consistent with the analysis of extraordinary and compelling reasons the Court has engaged in with recent COVID-19 cases. *See, e.g.*, *Young*, 2020 WL 2614745 at *3 (a 64-year-old African American defendant who suffers from hypertension and chronic kidney disease presented extraordinary and compelling reasons); *United States v. Lint*, No. CR18-5152 BHS, 2020 WL 4698815, at *2 (W.D. Wash. Aug. 13, 2020) (a defendant housed at a federal correctional institution that had only two inmates infected with COVID-19 did not present an extraordinary and compelling reason); *United States v. Gray*, No. CR16-5600 BHS, 2020 WL 5759792, at *2–3 (W.D. Wash. Sept. 28, 2020) (a relatively young female defendant with a Body Mass Index of 32.1, while obese, did not present sufficient evidence of extraordinary and compelling reasons without additional evidence of other risk factors). The Court has discretion to consider the factors provided by Judge Zilly in determining whether Sandoval has extraordinary and compelling reasons.[2]

---

[2] In the application of USSG § 1B1.13, the Commission has described three categories of potentially "extraordinary and compelling reasons," namely medical condition, age, and family circumstances, *see* USSG § 1.B1.13 cmt. n.1(A)–(C), as well as a "catch-all" provision, *id.* cmt. n.1(D), which "opens the door" to considering factors other than those specifically enumerated, *United States v. McPherson*, 454 F. Supp. 3d. 1049 (W.D. Wash. 2020). However, USSG § 1B1.13 has not been updated since the passage of the First Step Act of 2018, and district courts have largely found that the Commission's list of extraordinary and compelling reasons is not binding, but rather helpful guidance. *See United States v. Almontes*, No. 3:05-cr-58 (SRU), 2020 WL 1812713, at *3 (Apr. 9, 2020 D. Conn.) (providing a list of cases from around the country addressing whether the Commission's list is binding). Although the June 10 Order found otherwise, the Court concludes that, given the "catch-all" provision and the non-binding status of the comments to USSG § 1B1.13, it has discretion to construe the meaning of extraordinary and compelling reasons. *See Grubbs*, 2020 WL 3839619, at *2 n.2.

Here, Sandoval asserts his chronic medical conditions constitute extraordinary and compelling reasons because they place him at a higher risk of severe infection from COVID-19. Sandoval underwent a kidney transplant in 2011 and takes immunosuppressant medication because of the transplant, and he suffers from chronic kidney disease, several heart conditions, and Type II diabetes mellitus. Sandoval also has a body mass index ("BMI") of 28 and has a history of obesity. The CDC recognizes that heart conditions, an immunocompromised state from solid organ transplant, and type II diabetes mellitus increase the risk of severe illness from COVID-19 and that being overweight, i.e. a BMI greater than 25 but less than 30, may increase the risk of severe illness.[3] Additionally, Sandoval is 65 years old. The CDC recognizes that severe illness from COVID-19 increases with age and notes that every eight out of ten COVID-19 deaths in the United States have been adults aged 65 years and older.[4]

Yet, Sandoval has already contracted COVID-19 and has received the first dose of the COVID-19 Moderna vaccine. He reports that he continues to suffer from lingering aftereffects from COVID-19 and has yet to fully recover. *See* Dkt. 614 at 9. It is consistent with this Court's precedent to find that absent a specific showing that the defendant themselves remains susceptible to reinfection, a previous diagnosis of COVID-

---

[3] Center for Disease Control and Prevention, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Feb. 1, 2021).

[4] Center for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Dec. 13, 2020).

19 cuts against a finding of extraordinary and compelling reasons. *See, e.g.*, *United States v. Christensen*, No. CR18-5411 BHS, 2020 WL 5982104, at *3 (Oct. 8, 2020 W.D. Wash.). However, Sandoval has made a specific showing that he still remains susceptible to reinfection.

Robert Rakita, M.D., is a Clinical Professor of Medicine at the University of Washington, subspecializing in solid organ transplant infectious disease, and provides an expert opinion relating to Sandoval's likelihood of reinfection. Dkt. 605-3. Although much is still unknown about the risk of reinfection from COVID-19, research has been conducted as to how immunosuppressed patients develop antibodies to fight COVID-19. Dr. Rakita opines:

> In studies so far, significantly fewer immunosuppressed patients developed antibodies to SARS-CoV-2, [i.e., COVID-19,] compared to the general population. While about 95% of the overall population develops SARS-CoV-2 antibodies, 30–35% of people taking immunosuppressive medications, including organ transplant recipients, do not develop those antibodies. This suggests that the risk of reinfection is likely to be higher in these patients, such as Mr. Sandoval.

*Id.* at 7–8. Additionally, Dr. Rakita explains that, while Sandoval has received his first dose of the Moderna COVID-19 vaccine, the efficacy of the vaccine in various sub-populations, such as immunosuppressed individuals, is still unknown. *Id.* at 10–11. Other vaccines, such as the influenza vaccine and the hepatitis B vaccine, have a dramatically decreased response in immunocompromised patients. *Id.* Sandoval has, through case-specific experts, made a showing that he has a different reinfection risk than the general population and that he remains susceptible to reinfection. The Government, additionally, provides no specific rebuttal to Sandoval's experts and arguments.

The June 10 Order previously concluded that Sandoval had not established extraordinary and compelling reasons because the Court assumed that release would place Sandoval at a greater risk in light of his immigration detainer. Although Sandoval will be held at an ICE facility prior to his deportation, he has established that he remains vulnerable to severe illness from COVID-19 and that the risk will only increase if he continues serve his sentence. Sandoval has thus established extraordinary and compelling reasons to warrant a reduction in his sentence.

**2. 18 U.S.C. § 3553(a) Factors**

Having found that extraordinary and compelling reasons have been established, the Court must still consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). The relevant factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (iv) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The Court's consideration of these factors has changed little since Sandoval's sentencing. On the other hand, the Court finds that the factor relating to the "need for just

punishment" has dramatically shifted since sentencing. The lock-down measures that prisons across the country like MCFP have undergone to mitigate the spread of the pandemic have made confinement much more punitive than was contemplated at sentencing. Visitations have been severely restricted at MCFP,[5] and BOP programs have stopped, except for those required by law.[6] This factor has much greater weight when balancing it with the other factors. Additionally, Sandoval is so ill that it cannot be reasonably said he poses a great danger to the public. And he has served approximately 70% of his sentence. After considering all the factors, the Court concludes that Sandoval has established an entitlement to warrant a reduction of his sentence from imprisonment at MCFP.

Under 18 U.S.C. 3582(c)(1)(A), if the Court determines that a reduction in sentence is appropriate, the Court may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." Pursuant to this authority, the Court reduces Sandoval's term of imprisonment to time served.

## C.    Immigration Detainer

Sandoval is subject to an immigration detainer and does not oppose an order requiring his transfer to the custody of Immigration and Customs Enforcement ("ICE"). *See* Dkt. 605 at 1–2, 29–31. He asserts that he has obtained clearance from Mexican

---

[5] Federal Bureau of Prisons, *MCFP Springfield*, https://www.bop.gov/locations/institutions/spg/ (last accessed Feb. 5, 2021)

[6] Federal Bureau of Prisons, *BOP Modified Operations*, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

authorities to be repatriated and requests that the Court order ICE to process his removal in a reasonably expeditious manner and order the Government to provide a status report regarding the removal process 30 days after the entry of this order. The Government argues that there is no legal authority supporting Sandoval's requests.

However, district courts around the country have faced the issue of granting compassionate release when the defendant has an active immigration detainer and have ordered defendants released directly into ICE custody pursuant to the detainers. *See, e.g.*, *United States v. Pompey*, No. CR 97-0638 RB, 2020 WL 3972735, at *5 (D.N.M. July 14, 2020) ("The Government offers no persuasive reason that the Court may not grant compassionate release and order immediate release from BOP custody to ICE pursuant to the detainer."); *United States v. Molina Acevdeo*, No. 18 Cr. 365 (LGS), 2020 WL 3182770, at *4 (granting compassionate release and ordering the defendant to be released into ICE custody for removal to Mexico); *United States v. Ardila*, No. 3:03-cr-264 (SRU), 2020 WL 2097736, at *2 (D. Conn. May 1, 2020) ("Upon release from BOP custody he shall enter the custody of Immigration and Customs Enforcement pursuant to his underlying detainer."). While the Court does not have the authority to direct ICE once Sandoval is in its custody, the Court may exercise its discretion and fashion relief as necessary.

### III. ORDER

Therefore, it is hereby **ORDERED** that Defendant Sandoval's motion to seal, Dkt. 606, and motions for leave to file overlength briefing, Dkts. 608, 615, are **GRANTED** and that the Government's motion for leave to file overlength response, Dkt. 610, and

motion to seal, Dkt. 612, are **GRANTED**. It is hereby further **ORDERED** that Sandoval's motion to reduce sentence and for compassionate release, Dkts. 564, 605, is **GRANTED** as follows:

1) Sandoval's term of imprisonment imposed is reduced to time served;

2) Sandoval shall be released from the custody of the BOP fourteen days after the entry of this Order into ICE custody;

3) The Government shall submit a status report when Sandoval is delivered to ICE custody or no later than thirty days after the entry of this Order, whichever is sooner, on the status of Sandoval's immigration detainer; and

4) Sandoval shall comply with all the other terms and conditions of supervised release set out in the original sentence and judgment dated April 24, 2015, Dkt. 401.

Dated this 22nd day of February, 2021.

BENJAMIN H. SETTLE
United States District Judge